IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>             Plaintiff,<br><br>     vs.<br><br>CONTINENTAL RESOURCES, INC.,<br><br>             Defendant. | CV 10-35-BLG-RFC-CSO<br><br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Liberty Mutual Insurance Company ("Liberty") initiated this declaratory judgment action against Defendant Continental Resources, Inc. ("Continental") seeking a declaration that Liberty has no duty to defend or indemnify Continental in a lawsuit filed against Continental in the Montana Seventh Judicial District Court . *Cmplt. for Declaratory Judgment (Court Doc. 1) at 7.*

Now pending are the parties' cross-motions for summary judgment. *Liberty's Mtn. (Court Doc. 16) and Continental's Mtn. (Court Doc. 19).* Having reviewed the record and the parties' arguments, the

Court issues the following findings and recommendations.

## I.   __BACKGROUND__[1]

On February 16, 2007, Clinton Mosby ("Mosby"), while working as an employee of Pioneer Drilling Services, Inc. ("Pioneer"), sustained injuries resulting in his death.  *Sched. Order (Court Doc. 11) Stipulations at ¶ 3(a).*  On September 23, 2009, Mosby's personal representative filed a complaint in state district court against Continental and others ("the Mosby lawsuit"), stating a claim for wrongful death on behalf of the decedent Mosby, and claims for negligent infliction of emotional distress and loss of consortium on

---

[1]Liberty attached as exhibits to its Complaint three documents: (1) Liberty's insurance policy no. TB1-641-004585-026 issued to Pioneer Drilling Services, Inc. ("Pioneer") for the period from October 26, 2006, through October 26, 2007 (Ex. A) (the "Policy"); (2) the Daywork Drilling Contract between Pioneer and Continental (Ex. B) (the "Contract"); and (3) a state court complaint against Continental (Ex. C) (the "Mosby lawsuit").  Both Liberty and Continental again filed these same documents in support of their summary judgment motions.  *See Liberty's Stmt. of Undisputed Facts (Court Doc. 18) at Exhibits A, B, and C; Continental's Notice of Filing (Court Doc. 22) at Exhibits A, B, and C.*  For simplicity, the Court refers herein only to the copies of the documents attached as exhibits to Liberty's Complaint.  For citations to specific page numbers, the Court uses the page numbers from the Court's electronic filing system.

behalf of the Mosby's heirs.  *Court Doc. 1-4.*[2]

At the time of Mosby's accident, Pioneer was operating under a Daywork Drilling Contract ("the Contract") with Continental "to drill [for Continental] ... [a] designated well or wells in search of oil or gas on a Daywork Basis."  *Court Doc. 1-3 at 1.*  The Contract identifies Pioneer as the "CONTRACTOR" and Continental as the "OPERATOR."  *Id.*  It contains an insurance provision that states in pertinent part:

> 13.   INSURANCE
>
> During the life of this Contract, Contractor shall at Contractor's expense maintain, with an insurance company or companies authorized to do business in the state where the work is to be performed or through a self-insurance program, insurance coverages of the kind and amount set forth in Exhibit "A," insuring the liabilities specifically assumed by Contractor in Paragraph 14 of this Contract. . . .  Operator and Contractor shall cause their respective underwriters to name the other additionally insured but only to the extend (sic) of the indemnification obligations assumed herein.

*Id. at 4.*

---

[2]The Mosby lawsuit is captioned *Clinton Jodele Mosby, deceased, by and through his personal representative, Arlana Mosby, and Arlana Mosby, personal representative, on behalf of the heirs of Clinton Jodele Mosby, Plaintiffs, vs. Continental Resources, Inc., an Oklahoma corporation, Dakota Territory Consulting, Inc., a North Dakota corporation, and John Does I-V, Defendants* (the "Mosby lawsuit"). *Court Doc. 1-4.*

Relevant here, Paragraph 14.8 of the Contract provides:

14.8 Contractor's Indemnification of Operator: Contractor shall release Operator of any liability for, and shall protect, defend and indemnify Operator from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Contractor's employees or Contractor's subcontractors of any tier (inclusive of any agent or consultant engaged by Contractor) or their employees, or Contractor's invitees, on account of bodily injury, death or damage to property.

*Id.*

At the time of Mosby's accident, Pioneer had an insurance policy issued by Liberty – policy no. TB1-641-004585-026 (the "Policy"). *Court Doc. 1-2.* The Policy contains an endorsement referred to as the "Blanket Additional Insured," which describes who qualifies as an additional insured as follows:

WHO IS AN INSURED is amended to include as an insured any person or organization for whom you have agreed in writing to provide liability insurance. But:

The insurance provided by this amendment:

1.  Applies only to "bodily injury" and "property damage" arising out of (a) "your work" or (b) premises owned by or rented to you;

2.  Applies only to coverage and minimum limits of insurance

required by the written agreement, but in no event exceeds either the scope of coverage or the limits of insurance provided by this policy;

*Id. at 23.*

Continental tendered defense of the Mosby lawsuit to Liberty, Pioneer's insurance carrier. *Continental's Errata to its Br. in Support of Mtn. for Summary Judgment (Court Doc. 23) at 2; Liberty's Br. in Opposition to Continental's Mtn. for Summary Judgment (Court Doc. 24) at 11.* Liberty, on Pioneer's behalf, accepted the defense under a reservation of rights. Liberty then filed this declaratory judgment action. *Id.* Liberty maintains that it has no obligation to defend and indemnify Continental in the Mosby lawsuit. Continental counters that Liberty is required to provide insurance coverage to Continental for the Mosby lawsuit.

## II.   **SUMMARY JUDGMENT STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* When parties submit cross-motions for summary judgment, as here, the Court must consider each motion on its own merits. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

The parties do not dispute that resolution of this action turns on the application of Montana law to the Contract and Policy language discussed above. Thus, the parties' summary judgment motions present pure questions of law.

## III. DISCUSSION

### A. The Parties' Arguments[3]

#### 1. Liberty's Arguments

Liberty argues that "the Contract does not require Pioneer to

_____

[3]The Court observes that some of the arguments in both parties' briefs could be construed as comments on opposing counsel rather than comments limited to the legal issues at hand. As noted in the April 2011 issue of the Montana Lawyer, Vol. 35, No. 6, at 1, "Civility Matters."

defend and indemnify Continental, meaning that coverage is not triggered under the Policy." *Liberty's Br. Supporting Mtn. for Summary Judgment (Court Doc. 17) at 2.* To reach this conclusion, Liberty relies on its interpretation of the interplay between language in the Policy, the Contract, and Montana's workers' compensation law. *Id. at 7-9.*

Liberty first notes that the Policy's Blanket Additional Insured endorsement limits the Policy's coverage of an additional insured to "coverage . . . required by the written agreement" between the insured (Pioneer) and the additional insured (Continental). *Id. at 7* (quoting the Policy). Liberty notes that "the only document which could be interpreted as 'the written agreement' is the Contract[ ]" between Pioneer and Continental. *Id. at 8.*

Liberty next notes that the Contract's insurance provision, Paragraph 13, provides that Pioneer shall maintain "insurance coverage . . . insuring the liabilities specifically assumed by [Pioneer] in Paragraph 14 of this Contract" and names Continental an "additionally insured but only to the extend (sic) of the indemnification obligations

assumed herein." *Id*. (quoting the Contract). Liberty notes that Paragraph 14.8 of the Contract describes the indemnification obligations in more detail. *Id*.

Liberty next points to that portion of Montana's workers' compensation law, which provides:

> an employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act or for any claims for contribution or indemnity asserted by a third person from whom damages are sought on account of the injuries or death. The Workers' Compensation Act binds the employee and, in case of death, binds the employee's personal representative and all persons having any right or claim to compensation for the employee's injury or death[.]

*MCA § 39-71-411.*

In reading the language from the Policy, the Contract, and Montana's workers' compensation law together as it is set forth above, Liberty argues that the workers' compensation statute

> nullifies any indemnification obligations Pioneer otherwise had under paragraph 14 of the Contract to Continental against the Mosby Lawsuit because Mosby was a Pioneer employee covered by the Workers' Compensation Act, and his survivors received benefits under the auspices of that Act. Accordingly, because Pioneer has no duty to defend or indemnify Continental against Mosby's claims under the applicable written agreement, i.e., the Contract, no coverage

is triggered under Liberty Mutual's Policy as it "applies only
to . . . coverage required by written agreement."

*Court Doc. 17 at 9.*

For this argument, Liberty relies on the Montana Supreme
Court's decision in *Plum Creek Marketing, Inc. v. American Economy
Ins. Co.*, 214 P.3d 1238 (Mont. 2009). It argues that *Plum Creek* held,
"in essence, that because the injured employee could not make a claim
against his employer by virtue of the exclusive remedy of worker's
compensation, the project owner did not qualify as an additional
insured under the terms of the named insured's policy . . . [and] [t]hat
is precisely the situation here." *Court Doc. 17 at 12.*

Finally, Liberty notes that the Contract does not require Pioneer
to indemnify Continental against independent claims of third parties.
Thus, Liberty argues, the Policy does not, in any event, extend coverage
to Continental for Mosby's survivors' claims for emotional distress and
loss of consortium. *Id. at 3, 16.*

### 2.  Continental's Arguments

Continental argues generally that, under the Contract, "Pioneer
agreed to purchase insurance and name Continental as an additional

insured and its insurance carrier, Liberty, is required to indemnify Continental under the Blanket Additional Insured Endorsement and Liberty's own policy terms." *Continental's Br. in Support of Mtn. for Summary Judgment (Court Doc. 20) at 1-2.* Continental argues that it "is seeking to enforce Pioneer's obligation to provide coverage in the form of an additional insured endorsement." *Id. at 7.* If Pioneer's obligation is properly enforced, Continental argues, "Liberty is required to provide indemnity to Continental under the additional insured endorsement and the terms of its [P]olicy." *Id.*

Continental relies on the same provisions of the Contract and Policy discussed above to support its position. Continental further relies on the Montana Supreme Court's decision in *United National Ins. Co. v. St. Paul Fire & Marine Ins.*, 214 P.3d 1260 (Mont. 2009), arguing that *United National* "held the insurer of a subcontractor owed a duty to defend the general contractor against a claim by an employee of a subcontractor." *Court Doc. 20 at 8.*

Continental also disputes Liberty's argument that workers' compensation exclusivity prohibits Liberty from insuring Continental

as an additional insured in this case.  *Id. at 12-14.*  It argues that Liberty's reliance on *Plum Creek* is misplaced because that decision "is distinguishable and inapplicable to this lawsuit because the policy language is different."  *Id. at 11.*  Continental argues:

> [MCA] § 39-71-411 does not operate to invalidate the additional insured requirement found in the [Contract], thereby nullifying Continental's status as an additional insured under the policy.  Pursuant to the express terms of the [Contract], Pioneer was contractually bound to provide Continental with insurance coverage for the very type of accident that occurred here, regardless of who was negligent. . . .
>
> Under its endorsement, Liberty owes the same defense and coverage duties to Continental (the additional insured) as it does to the named insured, i.e. the named insured and the additional insured are two separate insureds under the same policy and each are covered for their own negligence, regardless of whether the other insured was negligent.  To hold otherwise would relieve Liberty [ ] of the contractual obligation to cover Continental [ ] and would render the policy completely illusory.

*Id. at 16.*

Continental also argues that its reasonable expectations under the Contract are that it would have insurance coverage.  *Id.*  Under Montana law, it argues, the Court must construe the Policy's terms liberally for the benefit of the insured.  *Id.*

Continental does not respond to Liberty's argument that there is no coverage for the claims of Mosby's heirs because the Contract does not require Pioneer to defend or indemnify Continental against claims by these other parties who are not Pioneer's employees.

## B.   <u>Applicable Law</u>

The case at hand requires the Court to interpret language from both the Contract between Pioneer and Continental and the insurance policy that Pioneer had with Liberty.  Under Montana law,[4]

> [t]he construction and interpretation of a contract is a question of law for the Court to decide. . . .  When the language of a contract is clear and unambiguous, the language controls, and there is nothing to construe or interpret.  A contract is not ambiguous merely because parties disagree over interpretation.  Rather, ambiguity exists where the language of the contract, as a whole, is reasonably subject to different interpretations.

*In re Estate of Burrell*, 245 P.3d 1106, 1111 (Mont. 2010) (citations omitted).

Insurance contract interpretation likewise presents questions of

---

[4]Because jurisdiction is based on diversity of citizenship, this Court must follow the substantive law of Montana.  *Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Also, "[t]he parties agree that Montana law applies to the issues in this case."  *Court Doc. 11, Stipulations at ¶ 3(c)*.

law for the Court to decide. *Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 395 (Mont. 2008). Courts are to "examine insurance contracts as a whole, with no special deference to specific clauses." *Id.* A policy's language "governs if it is clear and explicit." *Marie Deonier & Assoc. v. Paul Revere Life Ins. Co.*, 9 P.3d 622, 630 (Mont. 2000).

Courts are to "accord the usual meaning to the terms and the words in an insurance contract, and ... construe them using common sense. An insurance contract is ambiguous if it is 'reasonably subject to two different interpretations.'" *Modroo*, 191 P.3d at 395 (citing *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, ¶ 26 (Mont. 2003)). Although Montana courts are to strictly construe doubts in coverage against the insurer, courts are not to rewrite a policy's terms, but rather to enforce the terms as written. *Generali-U.S. Branch v. Alexander*, 87 P.3d 1000, 1004 (Mont. 2004).

## C. <u>Analysis</u>

The Court has carefully reviewed the parties' submissions filed in support of their respective motions and the relevant authority upon which each relied. Having done so, the Court concludes that the

exclusivity provision of Montana's Workers' Compensation Act does not operate to preclude policy coverage of Continental for claims against Continental by Pioneer's employees. With respect to the other claims against Continental, the Court concludes, for reasons set forth below, that the Contract's language does not extend coverage to Mosby's heirs for their claims for emotional distress and loss of consortium. Thus, for the reasons that follow, the Court recommends that Liberty's motion be granted in part and denied in part, and that Continental's summary judgment motion be granted in part and denied in part.

### 1. Claims On Behalf of Decedent Mosby

#### a. The Contract

The Contract between Pioneer and Continental generally provides that Pioneer must obtain insurance covering Continental. As noted, the Contract's Paragraph 13 provides, in relevant part, that

> [Pioneer] shall at [its] expense maintain . . . insurance coverages . . . insuring the liabilities specifically assumed by [Pioneer] in Paragraph 14 of this Contract. . . . [Continental] and [Pioneer] shall cause their respective underwriters to name the other additionally insured but only to the exten[t] of the indemnification obligations assumed herein.

*Court Doc. 1-3 at 4.*

Paragraph 14.8 provides that "[Pioneer] shall release [Continental] of any liability for, and shall protect, defend and indemnify [Continental] from and against all claims, . . . and causes of action of every kind . . . without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of [Continental's] employees[.]" *Id.*

The Court concludes that the Contract's clear and unambiguous language imposes upon Pioneer an obligation to provide insurance coverage for Continental for the wrongful death claims in the Mosby lawsuit. In sum, Paragraph 13 requires Pioneer to maintain insurance coverage insuring liabilities it assumes in Paragraph 14, which includes obligations to "protect, defend and indemnify" Continental from "all claims . . . and causes of action of every kind . . . without regard to the cause . . . or the negligence of any party or parties arising in favor of [Continental's] employees[.]" *Id.* The clear language of these provisions requires no further interpretation or construction and renders any other conclusion unreasonable.

### b.    The Policy

Next, the Court must examine the language of Pioneer's insurance policy with Liberty. As noted, the Policy's "Blanket Additional Insured" endorsement identifies who qualifies as an additional insured, in relevant part, as "any person or organization for whom [Pioneer] ha[s] agreed in writing to provide liability insurance . . ." but limits such insurance as applying "only to coverage . . . required by the written agreement[.]" *Court Doc. 1-2 at 23.*

As the Court concluded above, Pioneer "agreed in writing to provide liability insurance" to Continental in the Contract between them. Construing, as it must, the Policy's "Blanket Additional Insured" endorsement in a way that "accord[s] the usual meaning to the terms and words . . . and [construing them] using common sense[,]" *Modroo*, 191 P.3d at 395, the Court concludes that Continental qualifies as an additional insured under the Policy. The Policy's clear and explicit language permits no other conclusion. *Marie Deonier & Assoc.,* 9 P.3d at 630.

The Court next turns to the Policy's language purporting to limit

its coverage of Continental, as an additional insured, to only that "required by the written agreement" between Pioneer and Continental. As already noted, the Contract – *i.e.*, "the written agreement" through which Pioneer agreed to provide insurance coverage for Continental – provides in Paragraph 13 that Pioneer and Continental are to "cause their respective underwriters to name the other additionally insured but only to the exten[t] of the indemnification obligations assumed" in the Contract. *Court Doc. 1-3 at 4.* And, as noted, Paragraph 14.8, entitled "Contractor's [Pioneer's] Indemnification of Operator [Continental]," describes Pioneer's obligations to Continental now operative under the Policy. These require Pioneer to "protect, defend and indemnify [Continental] from and against all claims . . . and causes of action of every kind . . . without limit and without regard to cause . . . or the negligence of any party or parties, arising in connection herewith in favor of [Continental's] employees[.]" *Id*.

The Court concludes that the quoted language from the Contract, although broad in its scope, is nevertheless clear and unambiguous. It explicitly requires Pioneer to maintain insurance coverages to "protect,

defend and indemnify" Continental "from and against all claims . . . and causes of action of every kind . . . without limit . . . arising in connection" with the Contract between them. Thus, "there is nothing to construe and interpret." *Burrell*, 245 P.3d at 1111. The insurance coverage required by the Contract, as limited by the Policy, is sufficiently expansive to provide coverage to Continental as an additional insured.

In reaching its conclusions herein, the Court finds unpersuasive Liberty's argument that the exclusive remedy provision of Montana's workers' compensation law nullifies Pioneer's obligations to Continental under Paragraph 14 of the Contract. First, nothing in MCA § 39-71-411 precludes Continental from being covered, as an additional insured, under Pioneer's policy with Liberty. Continental is not seeking indemnification or contribution from Pioneer in contravention of MCA § 39-71-411. Rather, Continental seeks to enforce those provisions of Pioneer's policy with Liberty that extend coverage to it as an additional insured.

Second, the Court concludes that Liberty's reliance on *Plum Creek*

is misplaced.  In *Plum Creek*, the injured employee of a contractor sued "the Company," Plum Creek.  As part of a contract between the parties, the contractor was required, *inter alia*, to indemnify Plum Creek against injury claims arising out of the contractor's work for Plum Creek and to purchase insurance protecting Plum Creek from such claims.  *Plum Creek*, 214 P.3 at 1240-41.  The insurance policy obtained included an endorsement that limited coverage of an "additional insured" as follows:

> No coverage will be provided if, in the absence of this endorsement, no liability would be imposed by law on you [contractor].  Coverage shall be limited to the extent of your negligence or fault according to the applicable principles of comparative fault.

*Id.* at 1242 (quoting policy's endorsement).

In construing this endorsement under the particular facts of the case, the supreme court concluded that the policy and endorsement did not cover Plum Creek.  The court found it "unequivocally clear" that the endorsement did not require the insurer to defend or indemnify Plum Creek because the injured employee's "complaint alleged negligence *against Plum Creek* and not [against the contractor]".  *Id.* at 1247

(emphasis in original).  In other words, the policy extended coverage to an additional insured only when the originally named insured was liable to the injured party.  Where, as in *Plum Creek*, the named insured was not liable to the injured party, the policy provided no coverage for the additional insured.  *Id*. at 1248 (holding that "because [the contractor] was not sued for its own negligence nor found liable for any tortious conduct, [the insurer] had no duty to defend or indemnify Plum Creek under the Policy and its Endorsement.").

Plum Creek is factually distinguishable from the case at hand. Here, as noted above, nothing in the Policy requires that Pioneer be liable before coverage is available to Continental.  The supreme court based its decision to deny coverage on the policy language, not on the exclusive remedy provision of Montana's workers' compensation law as Liberty argues.

The Court finds that the instant case's circumstances more closely resemble those in *United National,* 214 P.3d 1260.  In *United National*, a contractor and subcontractor entered a contract which required, *inter alia*, the subcontractor to purchase and maintain insurance listing the

contractor as an additional insured.  *Id*. at 1263, 1268.

An employee of the subcontractor was injured while working with the contractor's equipment.  The contract between the contractor and subcontractor "contained an indemnity provision, stating that the subcontractor will 'indemnify and hold harmless' the contractor for all 'claims, damages, loss and expenses' resulting from 'performance of the Subcontractor's Work.'"  *Id*. at 1264.  The subcontractor's insurance policy provided for "additional insureds" as follows:

> [s]ubject to all its terms, conditions and endorsements, such insurance as is afforded by the policy shall also apply to the following entity(ies) as an additional insured, but only as respects liability arising from (1) premises owned by or occupied by the Named Insured, or (2) the contract entered into by the Named Insured.

*Id*. at 1268 (quoting policy).

The policy named the contractor as an additional insured through a "Certificate of Insurance" and through a policy endorsement that stated:

> Subject to the terms and conditions of this policy, it is understood and agreed that with respect to claims arising out of work performed by the Named Insured, the coverage afforded herein shall be primary in relation to any policies carried by any person or organization to whom or to which

the Named Insured is obligated by virtue of a written
contract, and then only as required by said written contract.

*Id*. at 1268-69 (emphasis removed).

The injured employee sued the contractor, whose liability
insurance carrier, St. Paul, tendered the defense to the subcontractor's
insurer, United National, which rejected the tender arguing that the
contractor had a nondelegable duty to maintain a safe work site. *Id*.
St. Paul continued to defend the contractor, and ultimately settled with
the injured employee. It then filed a declaratory judgment action
against United National "seeking payment of the amount it paid to
settle the claim with [the injured employee] as well as the attorney fees
and costs it incurred in defending the original action and the
declaratory judgment action." The district court granted St. Paul
summary judgment. *Id*.

The Montana Supreme Court affirmed, reasoning:

While the Scaffolding Act and the case law interpreting that
act create a nondelegable duty to ensure workplace safety,
the party with that duty can still insure itself from liability
arising out of violations (alleged or proven) of that duty as
long as the duty itself is not being delegated to another. In
other words, carrying insurance for liability under the
Scaffolding Act is not the same as delegating one's duty to

comply with the Scaffolding Act. . . . [The contractor] is not attempting to delegate its duty under the Scaffolding Act. Rather, [the contractor] seeks a determination that United National's policy, listing [the contractor] as an additional insured, covers [the contractor] for its liability to [the injured employee].

*Id*. at 1266-67.

The supreme court concluded that it was "clear from the plain language of the policy that United National intended to cover [the contractor] for the type of incident that occurred here. . . . The policy plainly states that it affords additional coverage to additional insured for 'liability arising from (1) premises owned by or occupied by the Named Insured, or, (2) the contract entered into by the Named Insured.'" *Id*. at 1269. The circumstances of the case at hand are in accord.

### 2. Claims by Heirs

In the brief supporting its motion for summary judgment, Liberty argues that there is no coverage for the survivors' independent claims for emotional distress and loss of consortium because the Contract does not require Pioneer to indemnify Continental against these independent claims of third parties. *Court Doc. 17 at 3.* Liberty urges

that the Contract "does not purport to require Pioneer to defend or indemnify Continental against claims by persons who are not its employees." *Id. at 16.*

As noted above, Continental did not respond to this argument, despite having had the opportunity to do so. *See Court Docs. 20, 26, and 29.* When a party fails to respond to an opponent's argument, the Court may deem the failure to respond as an indication that the motion is well-taken. *See, e.g., Local Rule 7.1(d)(1)(B)* ("failure to file a response brief may be deemed an admission that the motion is well-taken"). In addition, in its responsive brief Continental seems to acknowledge that the Contract requires Pioneer to purchase insurance that covers Continental only "against any conceivable claim that might arise in favor of a Pioneer employee." *Court Doc. 26 at 2.*

As Liberty argues, the Contract does appear to contain language that limits the Policy's reach. Paragraph 14.8, as noted, provides that "[Pioneer] . . . shall protect, defend and indemnify [Continental] from and against all claims, . . ., and causes of action . . . arising in connection herewith in favor of [Pioneer's] employees . . . on account of

bodily injury, death or damage to property." *Court Doc. 1-3 at 4.* This language does not require Pioneer to indemnify Continental against independent claims of third parties, but rather limits this obligation to claims arising in favor of Pioneer's employees.

Although neither party cites the Court to any authority on this issue, the Court notes that the Montana Supreme Court has held that survivors' third-party claims for emotional distress, if accompanied by physical manifestations, can be recognized as independent "bodily injury" claims. *See Allstate Insurance Co. v. Wagner-Ellsworth*, 188 P.3d 1042, 1051 (Mont. 2008). Also, the Court notes that the Contract carefully extends protection to claims "in favor of [Pioneer's] employees or [Pioneer's] subcontractors of any tier (inclusive of any agent or consultant engaged by [Pioneer]), or their employees, or [Pioneer's] invitees...." but does not in this list include the claims arising in favor of third parties. Nor does the Contract expressly require protection for any and all claims resulting from the bodily injury or death of an employee. The Court concludes that the Policy does not extend coverage to Continental for Mosby's survivors' claims for emotional

distress and loss of consortium.

## IV.  CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that Liberty's motion for summary judgment *(Court Doc. 16)* be GRANTED in part and DENIED in part, and that Continental's motion for summary judgment *(Court Doc. 19)* be GRANTED in part and DENIED in part as set forth herein.  The Court concludes that there is no basis for an award of attorney's fees herein.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 25th day of April, 2011.

/S/ Carolyn S. Ostby
United States Magistrate Judge